IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEALTHCARE SERVICES GROUP, INC., | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
| NEW ORLEANS HOME FOR THE INCURABLES, INC. d/b/a THE JOHN J. HAINKEL JR. HOME AND REHABILITATION CENTER, | : |
| Defendant. | : |

## COMPLAINT

Plaintiff, Healthcare Services Group, Inc. ("HCSG" or "Plaintiff"), by and through its undersigned counsel, complaining against Defendant, New Orleans Home for the Incurables, Inc. d/b/a The John J. Hainkel Jr. Home and Rehabilitation Center, avers as follows.

### The Parties

1. HCSG is a Pennsylvania corporation with its principal place of business at 3220 Tillman Drive, Suite 300, Bensalem, PA 19020.

2. Plaintiff is a citizen of Pennsylvania for purposes of diversity of citizenship subject matter jurisdiction.

3. Defendant, New Orleans Home for the Incurables, Inc. ("New Orleans Home" or the "Defendant") d/b/a The John J. Hainkel Jr. Home and Rehabilitation Center, is a Louisiana corporation with a last known address located at 612 Henry Clay Avenue, New Orleans, LA 70118. New Orleans Home operates a residential health care facility (the "New Orleans Facility") at the above address.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the Commonwealth of Pennsylvania and, upon information and belief, New Orleans Home is a citizen of Louisiana insofar as its principal place of business is located in that state. The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000) in the aggregate.

5. This Court has personal jurisdiction over the Defendant because, in the operative contract, attached hereto as Exhibit A, the Defendant expressly consented to personal jurisdiction and venue in the United States District Court for the Eastern District of Pennsylvania.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because: (i) the Defendant consented to the venue of this Court; and (ii) payment is due in this District.

**COUNT I**
**BREACH OF CONTRACT**

7. HCSG incorporates by reference the preceding paragraphs as if set forth herein at length.

8. On October 5, 2015, HCSG and New Orleans Home entered into a Housekeeping and Laundry Service Agreement (the "Agreement"). A true and correct copy of the Agreement is attached hereto, made a part hereof, and marked as Exhibit "A."

9. Pursuant to the Agreement, HCSG agreed to provide all necessary personnel and supervision to perform housekeeping services on the premises of the New Orleans Facility.

10. Pursuant to the Agreement, New Orleans Home was required to pay HCSG's specified monthly sums in consideration of HCSG's providing services to New Orleans Home. Specifically, New Orleans Home was required to pay $34,650.00 per month pursuant to the Agreement.

11. Pursuant to the Agreement, payment for services rendered during a given month was due and payable on the last day of the month in which services were rendered.

12. New Orleans Home has failed and refused to pay HCSG for all services rendered by HCSG to New Orleans Home.

13. The failure of New Orleans Home to make payments to HCSG when due constitutes a breach of the Agreement.

14. As a direct and proximate result of New Orleans Home's breach of its contractual duties, HCSG has been and continues to be damaged.

15. New Orleans Home accepted the work performed by HCSG without reservation or complaint.

16. Despite demand, New Orleans Home failed and refused to pay the outstanding obligations owed to HCSG.

17. Pursuant to the Agreement, New Orleans Home is entitled to recover an interest charge of 1.5% per month on amounts not paid within fifteen days of the due date.

18. The Agreement provides that HCSG is entitled to recover reasonable attorneys' fees in the event that it prevails in this action.

19. As of April 26, 2018, the total outstanding past due indebtedness owed by New Orleans Home to HCSG pursuant to the Agreement was $114,791.75.

WHEREFORE, Plaintiff, Healthcare Services Group, Inc., demands that judgment be entered in its favor against Defendant, New Orleans Home for the Incurables, Inc., in the amount of $114,791.75, plus contractual interest, and post-judgment interest at the statutory rate, reasonable attorneys' fees and costs and such other and further relief that this Court deems necessary and just.

## COUNT II
## UNJUST ENRICHMENT

20. HCSG incorporates by reference the preceding paragraphs as if set forth herein at length.

21. In the event it is determined that HCSG cannot proceed against the Defendant on claims for breach of contract, then this Count is specifically plead in the alternative pursuant to Fed. R. Civ. P. 8(a).

22. HCSG provided services to New Orleans Home at its request and insistence and has failed to remit payment for services rendered by HCSG.

23. New Orleans Home accepted the services and related supplies provided by HCSG without reservation or complaint and knew, or should have known, that HCSG expected to be paid for such services.

24. HCSG demands payment for the reasonable value of the services it supplied; however, payment has not been made.

25. New Orleans Home accepted and enjoyed the benefits of the services and supplies without remitting payment for the reasonable value of those goods and services.

26. If New Orleans Home fails to pay the reasonable value of the services, it will be unjustly enriched.

27. It would be unjust and inequitable to permit New Orleans Home to continue to enjoy the benefit of the services HCSG supplied to the detriment of HCSG.

28. As a result of New Orleans Home's wrongful conduct, HCSG has been deprived of reasonable value of its services and supplies.

04/25/2018 SL1 1519848v1 104212.00446

WHEREFORE, Plaintiff, Healthcare Services Group, Inc., demands judgment in its favor, and against New Orleans Home for the Incurables, Inc. for the value of the goods and services provided by HCSG plus attorneys' fees, costs, and interest and such other and further relief that this Court deems necessary and just.

STEVENS & LEE, P.C.

Dated: April 26, 2018

By: */s/ John C. Kilgannon*
John C. Kilgannon, Esquire
1818 Market Street
29th Floor
Philadelphia, PA 19103
(215) 751-1943
jck@stevenslee.com

*Attorneys for Plaintiff, Healthcare Services Group, Inc.*

# Exhibit A

## HOUSEKEEPING AND LAUNDRY SERVICE AGREEMENT

THIS AGREEMENT ("Agreement"), made this 5th day of October, 2015 ("Effective Date"), by and between Healthcare Services Group, Inc. ("HCSG") a Pennsylvania corporation with offices at 3220 Tillman Drive, Suite 300, Bensalem, PA 19020, and

New Orleans Home for the Incurables D/B/A The John J. Hainkel Jr. Home and Rehabilitation Center ("Client"), which operates the nursing home located at 612 Henry Clay Ave., New Orleans, LA 70118 ("Facility")

The parties hereto, intending to be legally bound, agree as follows:

**1.   SCOPE OF WORK.** HCSG will provide such housekeeping and laundry management, supervision, labor and materials as HCSG determines necessary, in its discretion, to provide the services identified on **Exhibit A** hereto ("Services") in accordance with the terms of this Agreement.

**2.   PRICING AND PAYMENT TERMS.**

2.1   **Service Fee.** As consideration for the Services identified on **Exhibit A**, Client shall pay HCSG an annual fee based on a 365-day year (the "Service Fee"), payable in equal monthly installments of $34,650.00 (the "Monthly Service Fee").[1]

2.2   **Payment Terms.** Payment is due for Services rendered not later than the last business day of the month in which such Services are rendered (the "Payment Due Date"). Client agrees to pay a late charge of one and one half percent (1½%) per month, compounded monthly, for all amounts not paid within fifteen (15) days of the Payment Due Date.

2.3   **Re-Bills.** In addition to the Services, Client shall reimburse HCSG for Pass Through Amounts as well as any materials and services requested by Client and provided by HCSG that are not identified on **Exhibit A**. Amounts corresponding to such Pass Through Amounts and additional materials and services shall be identified either on the invoice for the associated Services or on a separate additional invoice (a "Re-Bill") to be issued by HCSG to the Client.

2.4   **Increases and Pass Through Amounts.** Effective on each anniversary of the Effective Date, the Service Fee for a given year shall automatically increase by an amount equal to one and a half percent (1½%) of the Service Fee for the prior year ("Annual Increase"). In addition to the Service Fee for any given year, HCSG shall automatically pass through to Client any employment related costs and increases imposed by federal, state or local governmental authorities, or any applicable union contract ("Pass Through Amounts"). Client acknowledges that the Service Fee has been calculated in reliance upon information provided by or on behalf of

---

[1] Invoices for Services rendered in February of a Leap Year shall include the Monthly Service Fee plus an amount equal to 1/365th of the Service Fee.

Client. If after sixty (60) days from the Effective Date HCSG determines that such information was inaccurate or inconclusive, HCSG shall have the right to adjust the Service Fee accordingly.

2.5 **Taxes.** Amounts payable by Client hereunder do not include local, state, or federal sales, use, value-added, or other taxes or tariffs based on the licenses or services provided under this Agreement or Client's use thereof. Client shall pay all such taxes or tariffs as may be imposed upon HCSG or Client, except income taxes imposed on HCSG. Client shall be invoiced for, and Client shall pay, any such taxes and tariffs if HCSG is required to pay them on Client's behalf.

2.6 **Failure to Pay.** Client acknowledges that its failure to timely pay any amounts due hereunder, or any portion thereof, shall be a material breach of this Agreement for which HCSG may, in addition to pursuing all other remedies, immediately terminate this Agreement and/or cease providing Services. Client shall reimburse HCSG for all expenses incurred by HCSG in exercising any of its rights under this Agreement or applicable law with respect to a default in payment or other breach of this Agreement by Client, including reasonable attorneys' fees and the fees of any collection agency retained by HCSG.

3. **TERM AND TERMINATION.**

3.1 **Term.** The term of this Agreement shall be one (1) year commencing on the Effective Date hereof, unless terminated earlier in accordance with the terms of this Agreement (together with any Renewal Term, the "Term"). This Agreement will renew automatically for subsequent one-year periods ("Renewal Term") unless a Party provides written notice of non-renewal at least sixty (60) days prior to expiration of the applicable period.

3.2 **Termination.**

(a) By Client. Client may not terminate this Agreement within the first one hundred twenty (120) days following the Effective Date. Thereafter, Client may terminate this Agreement on sixty (60) days' written notice of termination ("Termination Notice") if: (i) HCSG fails to perform or observe any material duty, obligation, or covenant contained in this Agreement; (ii) such failure is not cured or remedied by HCSG within thirty (30) days of receipt of written notice to cure specifying in detail such failure(s). No Termination Notice by Client shall be effective unless accompanied by payment of all amounts then due and owing to HCSG up to and including the date of the Termination Notice. All other amounts due to HCSG shall be due and payable on the effective date of such termination.

(b) By HCSG. HCSG may immediately terminate this Agreement in the event that:

(i) Client fails to timely pay any sums due hereunder, and such failure continues for five (5) business days after written notice to Client, in the manner specified herein; or

2

(ii) Client fails to perform or observe any duty, obligation or covenant contained in this Agreement other than those set forth in subparagraph (b) (i) above and such failure continues for thirty (30) days after written notice thereof is sent to Client in the manner specified in this Agreement hereof.

(iii) (A) upon the insolvency of the Client; (B) the filing of a voluntary or involuntary petition under federal bankruptcy laws by or against the Client; (C) upon Client entering into an agreement with creditors for the liquidation of assets; (D) upon the appointment of a receiver or trustee to take charge of all assets of the Client; (D) upon the loss of license(s), permit(s) or accreditation(s) necessary to conduct the Client's businesses or to perform under this Agreement; (F) upon the loss or destruction of the Client's operations to such an extent that the Client can no longer carry out its business; or (G) HCSG determines in its commercially reasonable discretion, at any time, that its continued performance under this Agreement would be impractical or economically unfeasible.

4. **EQUIPMENT**. On the Effective Date, Client shall transfer to HCSG all housekeeping equipment located at the Facility which equipment shall thereafter be utilized and maintained by HCSG at its discretion and cost in performing the Services ("Housekeeping Equipment"). It is understood between the Parties that consideration for the transfer of the Housekeeping Equipment has been incorporated into the calculation of the Service Fee. Client shall be responsible for providing, maintaining, repairing and replacing at its sole cost all washers, dryers and other laundry equipment used in providing the Services (collectively, the "Laundry Equipment").

5. **COMPLIANCE WITH LAWS**. HCSG shall make commercially reasonable efforts to comply with all applicable federal, state and local laws and regulations (including minimum wage requirements) regarding employment, compensation, benefits and payment of its employees. HCSG will pay FICA, FUTA and worker's compensation and all applicable payroll and other taxes for its employees. Client shall comply with all laws applicable to its operation of the Facility. Neither party, in the performance of this Agreement, shall unlawfully discriminate against any person in providing services under this Agreement. Both parties to this Agreement shall comply with the requirements of Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973.

6. **CLIENT COOPERATION**. During the Term, Client shall ensure that HCSG has full access to the Facility in order to perform the Services. Further, during the Term, Client will provide at its cost the necessary utilities, including but not limited to electricity and water, and reasonable access to the Facility's telecommunications, computer, internet, e-mail, voice mail and similar systems, as necessary or desired for HCSG to perform the Services.

## 7. MISCELLANEOUS.

7.1 Notice. All notices, consents or other communications which either party is required or may desire to give to the other under this Agreement shall be in writing and shall be given by personal delivery or by deposit, postage prepaid, in the United States mail, certified or registered mail, return receipt requested, addressed to the parties at their respective address as set forth in the introductory paragraph hereto, and if to HCSG with a copy to: Healthcare Services Group, Inc., Legal Department, 3220 Tillman Drive, Suite 300, Bensalem, PA 19020. Any notice sent in compliance with this provision shall be deemed to have been given upon the earlier of receipt or five (5) days after mail deposit, except that notice of change of address shall not be deemed effective until actually received by the intended recipient.

7.2 Cooperation with HSS. HCSG shall, until four years after the expiration of the Term, upon written request, make available to the Secretary of the Department of Health and Human Services ("HHS"), or the Secretary's duly authorized representative, or upon request to the Controller General or the Controller General's duly authorized representatives, this Agreement and such books, documents and records pertaining to Services provided during such contract year that are necessary to certify the nature and extent of costs under this Agreement. The availability of HCSG's books, documents and records shall be subject at all times to such criteria and procedures for seeking or obtaining access as may be promulgated by the Secretary of HHS in regulations and other applicable laws. HCSG's disclosure under this paragraph shall not be construed as a waiver of any legal rights to which HCSG or the Client may be entitled. Each party will notify the other within ten days of receipt of a request for access. If pursuant to this Agreement, any of HCSG's duties and obligations are to be carried out by any individual or entity under a contract with HCSG with a value of $10,000 or more over a twelve month period, and that subcontractor is to a significant extent, associated or affiliated with, owns, or is owned by or has control of or is controlled by HCSG, each such subcontractor shall itself be subject to the access requirements and HCSG shall require such subcontractor to meet the access requirements.

7.3 Non-Solicitation of Managers. Each party recognizes and acknowledges that the other party's management personnel (e.g. account, area, key, district, regional and divisional managers and supervisors) ("Management Personnel") are essential to such party's respective business and that such persons are familiar with such party's confidential and proprietary information (including without limitation such party's operating and organizational procedures). As such each party agrees that during the Term of this Agreement and for a period of one (1) year after a proper termination of this Agreement, to not hire, solicit for hire, permit the hiring of directly or indirectly (e.g. through an affiliated or subcontracted entity) Management Personnel: (i) still employed by the other; or (ii) who had been employed by the other at any time within one (1) year before or after the termination of this Agreement. Each party acknowledges that a breach of

4

the obligations set forth in this paragraph would irreparably harm the other's business and leaves the other without an adequate remedy at law, and that the harmed party would be entitled to injunctive relief in addition to all other remedies available at law or in equity to enforce the terms of this paragraph. This paragraph shall survive the termination of this Agreement.

7.4     Choice of Law; Venue. This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania. Client consents to exclusive jurisdiction and venue in the Court of Common Pleas of Bucks County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania.

7.5     Binding Upon Successors. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, personal representatives and assigns. This Agreement may not be assigned (i) by Client without the written consent of HCSG; and (ii) by HCSG without the written consent of Client, except to an HCSG wholly owned or substantially related entity.

7.6     Authority. The individuals executing this Agreement on behalf of their respective entities represent that they are authorized to sign this Agreement on behalf of such entity and that the other Party is relying on such representation.

7.7     Agreement Supersedes. This Agreement supersedes any and all other agreements related to the Services provided for herein, either oral or written between the Parties hereto with respect to the engagement of HCSG by the Client and contains all the covenants and agreements between the Parties with respect to its subject matter. This Agreement shall not affect or modify any other agreements between the Parties with respect to the payment of any existing debts or obligations owed by the Client to HCSG.

7.8     Indemnification. Each party shall defend, indemnify and hold the other harmless from and against all claims, liability, loss and expenses, including reasonable costs, collection expenses and attorneys' fees, which may arise because of the sole gross negligence or gross misconduct of the indemnifying party in the performance of its obligations under this Agreement. Notwithstanding the foregoing, with respect to property damage, for which the parties maintain a system of coverage of their respective property, each party hereto waives its rights, and the rights of its subsidiaries and affiliates, to recover from the other party hereto and its subsidiaries and affiliates for loss or damage to such party's building, equipment improvements and other property resulting from fire, explosion or other cause typically covered in standard broad form property insurance policies. Further, neither party shall be liable to the other for any special losses, or consequential, incidental, indirect, punitive, or exemplary damages.

7.9   <u>Counterparts; Electronic Signatures.</u>   This Agreement may be executed in counterparts, each of which together shall be deemed an original, but all of which, taken together, shall constitute one and the same agreement. Either party may execute and deliver this Agreement by signing the same and sending a copy thereof to the other by facsimile or other electronic transmission. Such facsimile or other electronic document, including the signatures thereon, shall be treated in all respects as an original instrument bearing an original signature.

7.10   <u>Attorneys' Fees.</u>   In the event that any action or proceeding is brought to enforce any term, covenant or condition of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees, court costs and related expenses.

*– Signatures on following page –*

6

IN WITNESS WHEREOF, the duly authorized representatives of the Parties hereto have executed this Agreement as of the Effective Date.

| New Orleans Home for the Incurables D/B/A The John J. Hainkel Jr. Home and Rehabilitation Center | Healthcare Services Group, Inc. |
|---|---|
| *Robert Rodriguez, MSW* | *[signature]* |
| By: Robert Rodriguez | By: Chris Dye |
| Title: Administrator | Title: Regional Director |
| Date: 10/5/16 | Date: 10/5/16 |

[redacted block]

-- Signature page for The John J. Hainkel Jr. Home and Rehabilitation Center --

7

## EXHIBIT A

## HOUSEKEEPING AND LAUNDRY SERVICES FOR The John J. Hainkel Jr. Home and Rehabilitation Center

This Exhibit is an integral part of the Agreement and is incorporated therein, and the scope of the Services is limited to the items included in this Exhibit A. HCSG may provide other services at the request of Client for an additional fee (on which the parties will agree). Such billing for any extra services will be provided separately from the monthly Service Fee billed.

For full service housekeeping and laundry service HCSG shall provide:

- Full time Account Manager to supervise the Services
- District Manager to oversee operation
- All staffing responsibility including:
    a) Salaries/wages
    b) Taxes
    c) Fringe benefits
    d) Company Uniforms
- Background checks for HCSG employees, at its cost, in compliance with applicable federal and state law
- Vaccines, other physical and medical exams and tests, and drug screenings for HCSG employees, at Client's cost, in compliance with applicable federal and state law and as required at Facility
- Each of the laundry chemicals, housekeeping supplies and equipment listed in Table 1 below:

*Table 1*

| Disinfectant Cleaner | Metal Polish | Chemical Dispensing System |
|---|---|---|
| Germicidal Cleaner | Neutral Quat Disinfectant | Scrub Brushes |
| All Purpose Degreaser | Enzymatic Odor Eliminator | Dust Mops, Handles, Cloths |
| Bathroom Cleanser/Disinfectant | Laundry Detergents: Bleach, Softener, Destainer, Detergent | Mops, Buckets and Mop Handles |
| Glass Cleaner | TB Disinfectant Cleaner | Buff/Burnish/Stripping Pads |
| General Purpose Cleaner | Floor Stripper | Carpet Bonnets |
| Cream Cleanser | Neutral Floor Cleaner | Wet Floor and Caution Signs |
| Furniture Polish | Carpet Cleaner/Shampoo | Floor Enhancer Spray |
| Bleach/Bleach Wipes | Floor Finishes | Necessary supplementary tools for light housekeeping |
| Degreaser | Floor Sealer | |

8

Healthcare Services Group Responsibilities:
- All payroll and workers compensation responsibilities for employees
- Transfer risk related to Workers Compensation, general liability, EEOC claims/lawsuits, OSHA, etc.
- Provide salaried on site Manager
- Medical insurance for employees
- All housekeeping supplies, chemicals, wax, and stripper.
- All can liners for housekeeping, paper towels, toilet paper
- Purchase of all non-decorative white linen
- Weekly visits by district manager
- Quarterly visits by Regional Manager
- Monthly reports to CEO on facility operations
- Bi-weekly in-service and training for employees
- Additional monthly training for Housekeeping manager
- Monthly Quality Control by district manager (unit inspections)
- CEO's satisfaction scores gauged monthly (facility tours)
- All advertising and hiring costs
- All uniforms and nametags provided to the employees
- All housekeeping equipment repair costs and purchasing of new equipment.
- Criminal Background Checks and Social Security Verifications
- The purchase maintenance, and install of two washing machines

The John J. Hainkel Jr. Home and Rehabilitation Center Responsibilities:
- Purchase of hand sanitizer and hand soap all other soaps outside of hand soap (shampoo, bath soap, etc)
- Maintenance and repair of Dryers in the laundry area.
- Purchase of Pillows, Curtains, Bedspreads, blankets, etc.
- Purchase of Red biohazard bags and sharps containers
- Purchase of hand gloves for the housekeeping and laundry employees
- Facility will provide TB tests and drug screens at HCSG cost.

9